WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Robert Michael Piotrowski, | ) | CV 18-01134-PHX-DWL (MHB) |
|---|---|---|
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan, et al., | ) | |
| Respondents. | ) | |

TO THE HONORABLE DOMINIC W. LANZA, UNITED STATES DISTRICT COURT:

On April 13, 2018, Petitioner, Robert Michael Piotrowski, who is confined in the Arizona State Prison, Lewis - Stiner Unit, Buckeye, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereinafter "habeas petition")[1]. (Doc. 1.) On September 27, 2018, Respondents filed a Limited Answer (Doc. 10), and on October 15, 2018, Petitioner filed a Reply (Doc. 11). This matter was reassigned to undersigned Magistrate Judge on April 1, 2019. (Doc. 15.)

In Petitioner's habeas petition he asserts that his post-conviction counsel was ineffective in failing to raise the following three claims: (1) ineffective assistance of trial and appellate counsel for "failure to raise that [Petitioner]'s aggravated assault conviction violates the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and denied

---

[1]The Clerk of Court filing date is April 13, 2018, but pursuant to the prison mailbox rule, the date of filing is April 11, 2018, the date Petitioner certified it was placed in the prison mailing system (Doc. 1 at 15). See 28 U.S.C. § 2254 Rule 3(d).

him due process and fair trial;" (2) ineffective assistance of trial and appellate counsel for "failure to raise violation of due process and fair trial when the state elicited prior bad acts testimony about petitioner from the detective during direct examination and the courts failure to find cause for a mistrial violated Petitioner's Fifth, Sixth and Fourteenth Amendments of the United States Constitution;" and (3) ineffective assistance of trial and appellate counsel for failure to raise violations of due process and fair trial at sentencing which violated Petitioners Fifth, Sixth and Fourteenth Amendments of the United States Constitution. (Doc. 1) (internal quotations omitted).  Respondents assert that Petitioner's habeas petition should be denied and dismissed with prejudice, as Petitioner's three claims are procedurally defaulted, and that claim number three is, in any event, not cognizable in habeas proceedings. (Doc. 10.)

## STATE PROCEDURAL BACKGROUND

Petitioner was indicted by a state grand jury on May 26, 2011, on one count of burglary (count 1), four counts of aggravated assault on a police officer (counts 2-5) and one count of possession or use of dangerous drugs (count 6).  (Doc. 10, Exh. A[2].)  Petitioner proceeded to trial, and on the first day of trial, the court granted the state's motion to dismiss count 1, the burglary charge.  (Exh. G.)  At the close of the state's case, the court granted the state's motion to dismiss count 5, the count charging the aggravated assault of Officer J. Wade, and also granted Petitioner's motion for judgment of acquittal on count 3, the count charging aggravated assault of Officer E. Holmstedt. (Exh. I.)

After a 4-day trial Petitioner was convicted of count 4, aggravated assault of Officer W. Zygmont, and count 6, possession or use of methamphetamine.  (Id.)  Petitioner was acquitted of count 2, the count charging the aggravated assault of Officer M. Lowe.  (Id.)  At the initial sentencing hearing on April 20, 2012, the trial court sentenced Petitioner to presumptive terms of 15.75 years in prison on count 4, and ordered the sentence to run concurrently with the 10-year sentence imposed on count 6.  (Exh. N.)  As Petitioner was on

---

[2]All exhibits referenced are attachments to Respondents' Limited Answer (Doc. 10).

probation in two other cases at the time he committed the newest offenses, the trial court revoked his probation in those cases, and sentenced him to three and a half years in prison in CR 2007-132081 (trafficking in stolen property), and one year in prison in CR 2008-118920 (solicitation to commit forgery). (Exh. SS at 32-33.) His sentences in those matters were ordered to run concurrently with his new sentence. (Id.)

Thereafter, the state filed a motion seeking modification of Petitioner's sentence, asserting that the court erred in ordering that the sentences in the probation-violation cases run concurrent to the sentence imposed for the new offense. (Exh. O.) The trial court granted the state's motion, and re-sentenced Petitioner at a hearing on July 13, 2012. (Exh. P.) The trial court then, over Petitioner's objection, imposed consecutive sentences, reasoning:

> [U]nder § 13-709(C) if there's a probation sentence, I concluded that it must be revoked if another offense is committed, and that prison term of the new offense is to run consecutive to the prison sentence in the probation terms.
>
> And the State cited me and I found persuasive a 1984 decision of the Arizona Court of Appeals called *State v. Barksdale* . . . And what that concludes is that under 13-708(C) temporary release includes probation. And although 13-709(C) has been renumbered and changed in some minor fashions since 1984, in my view and what ultimately ruled is the operative language of temporary release has not been changed. And so as a result I think under 13-708(C) any prison sentence imposed in [this] matter must be consecutive to the revoked prison sentence and the probation terms.

(Exh. TT, at 4-5, 14-17).

In response to Petitioner's argument that the Court could impose a probation sentence on the prior convictions, the trial court stated:

> A.R.S. Section 13-708(C) reads as follows: A sentence imposed pursuant to this subsection shall revoke the convicted person's release if the person was on release and shall be consecutive to any other sentence from which the convicted person has been temporarily released.
>
> And as I break that down, what it indicates here is, first of all, the sentence imposed - this is in the 2011 matter - must be consecutive. It seems to me it doesn't make really any sense there to say you could put someone on probation and then have a sentence in a subsequent crime that would be consecutive to that probation . . .
>
> I think the second thing about the language there, though, is it says a sentence imposed pursuant to this subsection shall revoke the convicted person's release. And by using the phrase, "shall revoke", that seems to me

a command from the legislature [] that if someone is on release and they're convicted of [] a second offense, I am to revoke that person's release. So that means revoke, and - and sentence to prison. So that's the - the legal analysis that I've gone through.

(Id. at 12-13.)

Petitioner appealed his judgment and sentence and was appointed counsel. The sole issue raised on appeal was that the trial court abused its discretion by interpreting A.R.S. § 13-708(C) to require the revocation of his probation upon conviction of a new offense, as "probation" was not synonymous with "release" under the statute. (Exhs. Q, R.) On January 14, 2014, the Arizona Court of Appeals issued an opinion affirming the trial court decision and sentence, holding that § 13-708(C) "applies . . . where a defendant on felony probation is convicted of a new offense," and that, pursuant to the statute,  the trial court "was required to revoke [Petitioner]'s probation for his 2008 convictions."  State v. Piotrowski, 315 P.3d 1252, 1254 ¶ 9 (Ariz. App. 2014).

On October 11, 2016, Petitioner sought post-conviction relief, asserting, through counsel, the following claims:

1.     The state failed to meet its burden of proving beyond a reasonable doubt that Petitioner committed the crime of aggravated assault: specifically by failing to prove that Petitioner acted with the intent to cause anyone to be placed in reasonable apprehension or fear of harm, or that the victim's fear was reasonable, in violation of the Fifth, Sixth and Fourteenth Amendments.

2.     Petitioner's sentence was excessive and not proportionate to the crime committed, in violation of the Fifth and Eighth Amendment.

3.     Petitioner received ineffective assistance of counsel because counsel did not adequately advise Petitioner of the consequences of rejecting the state's plea offer.

(Exh. R.)

The trial court denied relief, finding that issues 1 and 2 were barred by Rule 32.2(a)(3), Arizona Rules of Criminal Procedure, as they could have been, but were not, raised on direct appeal.  Even if not precluded by the rule, the trial court found alternatively that Petitioner "presented no new facts to support his claims, . . . [that] there was sufficient

evidence to support the jury's finding, and the question of intent and the reasonableness of the victim's fear was for the jury to decide." (Exh. JJ at 2.) The trial court also ruled that Petitioner's sentence of 15.75 years was not cruel and unusual, given that Petitioner had multiple felonies and "assaulted a police officer, while [he] was on probation." (Id.) As to Petitioner's claim of ineffective assistance of counsel, the trial court denied Petitioner's claim on the merits. (Id. at 3.)

Petitioner sought review of the trial court's decision in the Arizona Court of Appeals. (Exh. KK.) His counsel raised the following issues on review:

1.     Petitioner's PCR claims of actual innocence and an unconstitutional sentence were not precluded.

2.     The trial court abused its discretion in denying Petitioner's claim that his aggravated assault conviction violated due process and that his sentence was unconstitutional.

3.     The trial court abused its discretion in denying Petitioner's ineffective assistance of counsel claim.

4.     The trial court abused its discretion in failing to conduct an evidentiary hearing.

(Exh. KK, at 2.)

The Arizona Court of Appeals summarily denied review on January 25, 2018, indicating that it "had reviewed the record in this matter, the superior court's order denying the petition for post-conviction relief, and the petition for review," . . .and found that "Petitioner ha[d] not established an abuse of discretion." (Exh. MM.) Petitioner timely filed his habeas petition on April 13, 2018. (Doc. 1.)

**DISCUSSION**

**Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S.

838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

Additionally, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[3] and "adequate"[4] – review of the merits of the claim by a federal habeas court is ordinarily barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)).

Specifically, in Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See, e.g., Stewart, 536 U.S. 856, 860 (2002) (determinations made under

_____

[3] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[4] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). The petitioner must also show actual prejudice, not just the possibility of prejudice. U.S. v. Braswell, 501 F.3d 1147, 1150 (9th Cir. 2007).

Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. See Rhines v. Weber, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

**Claim One.**

Petitioner's claim one is procedurally defaulted, as Petitioner did not raise, in PCR proceedings, a claim that trial and appellate counsel were ineffective by failing to challenge the verdict, and any attempt by him to return to state court to raise the claim would be futile. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Petitioner does not dispute, however, that the claim is procedurally defaulted. (Docs. 1, 11.)  Petitioner seeks relief pursuant to Martinez v. Ryan, 566 U.S. 1 (2012), asserting ineffective assistance of post-conviction counsel as cause for procedural default.  "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Martinez. 566 U.S. at 9.

To establish cause under Martinez, a petitioner must demonstrate that post-conviction counsel's failure to raise the defaulted claim was itself ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984), and that the underlying claim of ineffective assistance of counsel was "substantial." See Martinez, 566 U.S. at 14. A "substantial" claim "has some merit." Id. Like the standard for issuing a certificate of appealability, to establish a "substantial" claim, a petitioner must demonstrate that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Detrich v. Ryan, 740 F.3d 1237, 1245 (9th Cir. 2013) (internal quotations and citation omitted). In other words, a claim is "'insubstantial' if it does not have any merit or is wholly without factual support." Id. Determining whether an ineffective assistance of counsel claim is substantial requires a district court to examine the claim under the standards of Strickland.

To establish a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. See id. at 687. To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." Id.

- 9 -

at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. See id. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Review of counsel's performance is extremely limited. Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. Id.

To establish a Sixth Amendment violation, a petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. See id. at 691-92. To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The court need not address both Strickland requirements if the petitioner makes an insufficient showing on one. See id. at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed").

Petitioner asserts that his trial counsel was ineffective in not identifying insufficiency of the evidence in his motion for new trial as a constitutional violation, and that appellate counsel was ineffective in not claiming insufficiency of the evidence on appeal.  To obtain relief under Martinez, he must demonstrate that his PCR counsel was ineffective in not raising these claims.

Petitioner's trial counsel moved for a directed verdict after the close of the states's evidence, pursuant to Ariz.R.Crim.P. 20, asserting that the state did not prove the elements of the aggravated assault charges.  (Exh. QQ at 92.)  The trial court denied the motion, finding that there was evidence that the victim's "arm was struck" by the vehicle.  (Id. at 99.) Petitioner's trial counsel also filed a motion for new trial, claiming that there was insufficient evidence to support his aggravated assault conviction, but did not characterize it as a constitutional violation.  (Exh. L.)  The trial court summarily denied the motion.  (Exh. N.) Even if Petitioner could demonstrate that trial counsel was ineffective pursuant to Strickland,

Petitioner can not meet the prejudice prong, as he can not demonstrate that the trial court would have granted the motion had he asserted a constitutional violation. This is particularly evident given that the trial court, though finding Petitioner's claim procedurally barred, ruled in the alternative that Petitioner's claim lacked merit. "[T]here was sufficient evidence to support the jury's finding, and the question of intent and the reasonableness of the victim's fear was for the jury to decide." (Exh. JJ.)

Petitioner also claims that Petitioner's appellate counsel was ineffective because she did not raise insufficiency of the evidence as an issue on appeal. For that reason, the trial court found the issue precluded. However, the Martinez exception does not apply to claims of ineffective assistance of appellate counsel. See Davila v. Davis, __ U.S. __, 137 S.Ct. 2058, 2065 (2017) (declining to expand Martinez to apply to ineffective assistance of appellate counsel claims).

### Claim Two.

Petitioner asserts that his trial and appellate counsel were ineffective when they failed to raise violations of due process and fair trial objections based upon the state's eliciting prior bad acts testimony. Petitioner did not raise this issue on appeal or in PCR proceedings, and any return now to state court to exhaust the claim would be futile. Thus, Petitioner has procedurally defaulted the claim. Petitioner seeks relief from procedural default pursuant to Martinez. As to his claim that appellate counsel was ineffective, Martinez does not provide relief from default. See Davila, supra. Petitioner argues that his trial counsel was ineffective with respect to the "bad acts" testimony elicited, by not raising "plain error" and by not continuing to raise his objection.

During trial, the victim of the aggravated assault, Officer Zygmont, when explaining why he and other officers were looking for Petitioner on the date of the offense, testified as follows:

> Q. And you were asked to assist in a case involving the Defendant in this case?
>
> A. Yes, I was.

- 11 -

Q.    What were you asked to do.

A.    Detective with our burglary unit had asked our assistance to locate Defendant.  He had established probable cause for his arrest for burglary.

(Exh. PP at 21.)

Petitioner's counsel objected.  The Court sustained the objection, and ordered the jury to disregard "the statement with regard to why there's probable cause."  (Id.)  The Detective was then asked what the officers were asked to do next.  The detective answered:

A.    We assembled as our surveillance unit.  Immediately I recognized Defendant from another investigation I'd been involved in.

Defense Counsel again objected, moved to strike the testimony, and requested a sidebar, which the court granted.  The following exchange occurred at the sidebar:

Defense Counsel: This is exactly why I told the Court they were going to do that.  One, they come in and say probable cause and mention burglary, and now he's saying another investigation.  So now they've not only mentioned that they had probable cause to arrest him for burglary in this case, now he's referencing other investigations about Defendant.  He could have said he recognized him.  He didn't have to say other investigations.  I move for a mistrial.

The Court: Mr. Kittredge [the prosecutor]?

Mr. Kittredge: I didn't expect that answer Judge.

The Court: Okay.  Well, I've got a motion here for a mistrial.  What's the State's position with regard?

The state responded that "there is going to be testimony that [law enforcement officers] were looking for this individual for other events."  (Id. at 23.)  Petitioner's counsel asserted that the testimony was prejudicial because it demonstrated that the officers knew Petitioner, "that they're repeat offender cops, and that they have probable cause to arrest him,

to try to create the premise that he was some sort of - - high-risk criminal." (Id.) The trial court indicated that some of the testimony went to "the nature and the way that this whole situation went down is – given the fact that it's a SWAT team and they're there is going to be coming out." (Id.) The trial court denied the motion for a mistrial, but granted trial counsel's request for a cautionary instruction, which the court then gave to the jury:

> Defendant is here on trial for the counts in front of you today, the aggravated assault and the possession of dangerous drugs. He's not here on any other events that may have happened in the past, and decisions on whether or not he's guilty in these offenses must be made based on the evidence that's presented in this court on the evidence on which he's on trial.

> He is not and should not be convicted or held responsible for other events that may have happened or may not have happened in the past, because those aren't in front of us today. So what I'm saying is the jury needs to make its decisions based on evidence and law presented in this case about the charged offense, and not based on comments that people have made, suggestions or arguments of other events that took place in the past for which he's not on trial today.

(Exh. PP at 26.)

Later, during cross-examination of Officer Zygmont, Petitioner's counsel engaged in the following exchange with the witness:

Defense Counsel: Now, you – prior to arresting Defendant, you were getting information about Defendant; is that correct?

> A.    Yes.

Defense Counsel:    Okay. One of the things that you wrote in your report that you claim was that you believed Defendant may have weapons; is that right?

> A.    Yes.

> Defense Counsel:    Okay.  And do you know where that information came from?
>
> A.  It was relayed to me from Detective Wade involving a probation search that occurred at his residence where the firearms were located.

(Exh. PP at 68-69.)

Defense counsel immediately requested a sidebar, which was granted, during which the following exchange occurred:

> Defense Counsel: These officers have testified before.  I asked him where the information came from.  He said it came from Detective Wade, and then he throws in the probation stuff.  I didn't ask him based on what.  I asked him, "Where did the information come from."  He said "Detective Wade."
>
> . . .
>
> Defense Counsel:    That's what I asked him.   He throws in this probation stuff. . . . This is the third time the officer's done this.  I move for a mistrial.

(Exh. PP at 69-70)

The trial court denied the motion for a mistrial.  (Id.)

Petitioner claims that trial counsel abandoned his assertion of "cause" for a mistrial, leading to prejudicial information being introduced against him.  Although this Court agrees that the witness's comments were non-responsive, unprofessional, and appeared to be meant to prejudice Petitioner, Petitioner's claim of ineffective assistance of counsel lacks analysis and is factually inaccurate, in that Petitioner's counsel did repeat his request for a mistrial after the third objectionable comment.  Also, even if Petitioner could demonstrate that trial counsel's failure to state "cause" for a mistrial fell below the standards of effective assistance of counsel set forth in Strickland, he fails to demonstrate prejudice, in that he does not demonstrate that the trial court would have granted the motion had he stated "cause" or repeated his request for a mistrial.

- 14 -

Furthermore, the trial court gave the jury a curative instruction, directing the jury not to consider "any other events that may have happened in the past," and not to base its verdict on "comments that people have made, suggestions or arguments of other events that took place in the past for which [Petitioner is] not on trial." And, the jury acquitted Petitioner on one count of aggravated assault against another officer, indicating that it followed the court's instruction. Jurors are presumed to follow court instructions. See Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997). Jurors also submitted several questions to the jury, indicating that they were focused on the facts relating to the charges, to include questions relating to whether the officers were giving commands that identified them as police officers, whether any officers were hit or injured during the incident, and relating to the timing of the various officers' arrival at the scene. (Id. at 114-117.)

There was also ample evidence presented to support the jury's verdict on the aggravated assault charge. Officer Zygmont testified that he was positioned in front of the open driver's door of the vehicle as Petitioner was attempting to drive the vehicle forward. (Exh. PP at 37.) The vehicle had been stopped by police, and as the driver of the vehicle was cooperating and being pulled from the vehicle by officers, Petitioner (sitting between the driver and front passenger) was frantically trying to drive away. In doing so, Petitioner caused the vehicle to lunge forward several feet three times, at least once when Officer Zygmont was positioned in front of the open driver's door. (Id. at 36-40.) Officer Zygmont also testified that he believed that his arm was struck by the door during the incident. (Id. at 116.) The evidence was sufficient to establish that Petitioner intentionally placed Officer Zygmont in reasonable apprehension of imminent physical injury.

Petitioner's claim of ineffective assistance of counsel is not a substantial one. He does not demonstrate that his trial counsel was ineffective, or that, even if counsel was ineffective, that he was prejudiced; thus, Petitioner does not demonstrate cause under Martinez to excuse his procedural default of the claim.

\\\

\\\

**Claim Three.**

Petitioner claims that his trial counsel was ineffective because he failed to raise plain error as a basis for challenging the trial court's imposition of consecutive sentences, and that appellate counsel was ineffective because she did not raise plain error and a due process violation as a basis for challenging the trial court's imposition of consecutive sentences. Petitioner's claims are procedurally defaulted as he did not raise them in post-conviction proceedings, and it would be futile to return to state court to present these claims. Petitioner seeks relief from default, however, pursuant to Martinez. As to his claim that appellate counsel was ineffective, Martinez does not provide relief from default. See Davila, supra.

Additionally, other than Petitioner's assertion that trial counsel should have raised "plain error" in support of his objection to consecutive sentences, he provides no authority to support his assertion, and does not address in his Reply Respondents' argument that his claim is not substantial. This is not sufficient to state a claim. "It is well-settled that conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (citation and internal quotations omitted). In any event, Petitioner can not demonstrate deficient performance as the Arizona Court of Appeals held that the imposition of consecutive sentences was mandatory as a matter of Arizona law. Furthermore, errors in the application of state law are not cognizable in habeas corpus proceedings. Swarthout v. Cooke, 562 U.S. 216, 219 (2011). Petitioner's claim of ineffective assistance of counsel relating to his sentence is not substantial; thus, Petiitoner does not demonstrate cause under Martinez to excuse his procedural default of this claim.

**CONCLUSION**

Having determined that Petitioner's claims in his habeas petition are procedurally defaulted without excuse, the Court will recommend that Petitioner's habeas petition be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 24th day of June, 2019.

Michelle H. Burns
United States Magistrate Judge

- 17 -